UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| JOHN Q., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:19-CV-1249-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff John Q. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 14. Plaintiff also filed a reply. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 9) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED.**

## <u>BACKGROUND</u>

Plaintiff protectively filed his application for SSI on September 28, 2015, alleging disability beginning August 20, 2015 (the disability onset date), due to an injury to his lower back, shoulder, knee, right hand, and collarbone, and post-traumatic stress disorder ("PTSD"). Transcript ("Tr.") 142, 228-33. Plaintiff's claim was denied initially on March 22, 2016, after which he requested an administrative hearing. Tr. 155, 162. On May 7, 2018, Administrative Law Judge

Lynette Gohr (the "ALJ") presided over a hearing in Buffalo, New York. Tr. 70, 90. Plaintiff appeared and testified at the hearing and was represented by Christopher Grover, an attorney. *Id*. Coleman Cosgrove, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on June 27, 2018, finding that Plaintiff was not disabled. Tr. 70-85. On July 18, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-7. The ALJ's June 27, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## <u>ADMINISTRATIVE LAW JUDGE'S FINDINGS</u>

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her June 27, 2018 decision:

1. The claimant has not engaged in substantial gainful activity since September 28, 2015, the application date (20 CFR 416.971 *et seq.*);

2. The claimant has the following severe impairments: right hand and wrist fracture with healed malunion; left knee sprain/strain; cervical disc herniation and degenerative disc disease; lumbar degenerative disc disease; and asthma (20 CFR 416.920(c));

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[1] except he can occasionally climb ramps and stairs but can never climb ladders, ropes, and scaffolds; can occasionally  balance, stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to extreme heat, extreme cold, humidity, wetness, dust, odors, fumes and  pulmonary irritants;

5. The claimant is capable of performing past relevant work as a production assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965);

6. The claimant has not been under a disability, as defined in the Social Security Act, since September 28, 2015, the date the application was filed (20 CFR 416.920(1)).

Tr. 70-84.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits filed on September 28, 2015, the claimant is not disabled under section 1614(a)(3)(A) of the Act. Tr. 84.

---

[1]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ erred in finding that Plaintiff's mental impairments are non-severe. *See* ECF No. 9-1 at 16-20. Specifically, Plaintiff asserts that the ALJ improperly relied on the report of consultative examiner Susan Santarpia, Ph.D. ("Dr. Santarpia"), as well as her own lay opinion, to support her finding that Plaintiff's mental impairments are non-severe. *See id*. Next, Plaintiff argues that the ALJ erred at step three of the sequential evaluation process by failing to properly consider Medical Listing 1.04(A). *See id*. at 21-25. Finally, Plaintiff argues that the ALJ erred by failing to re-contact certain treating physicians who opined on Plaintiff's ability to work. *See id*. at 25-27.

The Commissioner responds that: (1) the ALJ properly considered the severity of Plaintiff's mental impairments; (2) Plaintiff's impairments did not meet the criteria of listing 1.04(A); and (3)the ALJ had sufficient evidence to consider, and thus, was under no obligation to recontact Plaintiff's treating providers. *See* ECF No. 14-1 at 18-20. Therefore, argues the Commissioner, the ALJ's decision is supported by substantial evidence. *Id*.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record in this case, the Court finds that the ALJ's analysis was thorough, and her conclusion that Plaintiff was capable of light work despite his impairments was supported by substantial evidence.

The record reflects that Plaintiff stopped working as a laborer at a steel plant in August 2015, the month he alleges his disability began, following injuries to his neck, lower back, shoulder, knee, and right hand. Subsequently, Plaintiff returned to college and pursued vocational training. The ALJ found that, while Plaintiff could not return to his steel plant work, he could perform his past work as a production assembler, which is an unskilled, light exertional position, and as such he was not disabled within the meaning of the Act.

First, Plaintiff contests the ALJ's consideration of the severity of his mental impairments; however, Plaintiff does not identify any particular error in the ALJ's analysis other than his own disagreement. *See* ECF No. 9-1 at 16-20. Upon review, the Court finds that the ALJ properly considered Plaintiff's mental impairments pursuant to the applicable regulations, and her evaluation is supported by substantial evidence, including the opinions of Dr. Santarpia and state agency psychological consultant A. Dipeolu ("Dr. Dipeolu"). Tr. 73-75.

When a claimant allegedly suffers mental impairments, the ALJ is required to follow a "special technique" at each level of the administrative review process to determine whether the claimant has any severe mental impairments and whether the impairments meet or equal the Listings. 20 C.F.R. § 404.1520a. Specifically, the ALJ must assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings. Prior to January 17, 2017, the limitations in four broad functional areas were: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § Pt. 404, Subpt. P, Appx. 1 (2016). After January 17, 2017, the four functional areas were amended to: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §

416.920a(c)(3). In assessing the functional areas, an ALJ must apply the degree of limitations using a five-point scale consisting of "none, mild, moderate, marked, and extreme." 20 C.F.R. § 416.920a(c)(4). If the degree of the limitations is "none" or "mild," an ALJ will find the generally find the impairments non-severe; however, if they are severe an ALJ must determine if the disorder meets or equals a listing. 20 C.F.R. § 416.920a(d)(1-2).

Here, the ALJ applied the special technique to determine the severity of Plaintiff's mental impairments and made explicit findings in all relevant functional areas. Tr. 73-75; see 20 C.F.R. § 416.920a. The ALJ properly found that Plaintiff had no functional limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting or maintaining pace, and adapting or managing himself. Tr. 74-75.

The ALJ first considered Dr. Santarpia's opinion that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits. Tr. 75, 572. Dr. Santarpia opined that Plaintiff's evaluation appeared to be consistent with stress-related problems, but in and of itself, this did not appear to be significant enough to interfere with Plaintiff's ability to function on a daily basis. Tr. 572. The ALJ also considered that during Plaintiff's examination, Dr. Santarpia observed normal mental status findings, including intact attention and concentration, as well as intact recent and remote memory. Tr. 74, 571. Additionally, Plaintiff's thoughts were coherent, and he was cooperative with appropriate eye contact. Tr. 570-71. His affect was of full range and his mood was normal. Tr. 571.

The ALJ also considered that Plaintiff attended college and job training during large portions of the relevant period. Tr. 74-75, 99-100. At the hearing, Plaintiff testified that he was

participating in a one-day internship where he shadowed other employees. Tr. 102-04. With respect to socialization, the ALJ considered that Plaintiff regularly attended church, went to the library, shopped in stores, and took public transportation. Tr. 74, 103, 118, 262-63. Furthermore, Plaintiff denied difficulty getting along with others. Tr. 74, 264, 266. Additionally, he handled his finances, cooked, and played chess during the period at issue, further evidencing his ability to apply information and concentrate. Tr. 74-75, 115, 261, 263.

In addition, the ALJ's decision reflects that she closely considered Plaintiff's mental health treatment notes in evaluating his functioning. Tr. 73-74. As the ALJ observed, prior to the relevant period, in February 2015, Plaintiff had an initial mental health assessment at Lake Shore Behavioral Health, Inc. ("Lake Shore"). Tr. 73, 534. He returned nearly one year later, in January 2016, and was diagnosed with PTSD and generalized anxiety disorder. Tr. 73. He had a psychiatric assessment in February 2016 and was prescribed Effexor. Tr. 73. He returned to Lake Shore in March 2017 to reestablish care, but he did not return and was ultimately discharged for failing to attend appointments. Tr. 74, 749-53.

The ALJ also observed that despite Plaintiff's reported depressive symptoms, his treating primary care providers frequently noted that his anxiety was stable (Tr. 716, 724, 771, 773, 777, 783), and his treating providers reported normal mental status findings, including intact memory, and normal mood (Tr. 468, 471, 474, 477, 672). Tr. 74. Additionally, Plaintiff's treatment notes described improvement in his symptoms, his many unremarkable mental status findings, and his decision to discontinue mental health treatment, which further supported the ALJ's finding. Tr. 73-74. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is entitled to rely not only on what the record says, but also on what it does not say."); *see also Navan*

*v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("Navan's claims of total disability were undermined by his failure to seek regular treatment for his allegedly disabling condition").

In considering Plaintiff's mental functioning, the ALJ also considered Dr. Dipeolu's opinion that while Plaintiff had an anxiety disorder, substance abuse disorder, and affective disorder, these conditions were non-severe. Tr. 75, 148. Specifically, Dr. Dipeolu assessed that Plaintiff had a mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. Tr. 148. Dr. Dipeolu also assessed that Plaintiff did not have any repeated episodes of decompensation. Tr. 148.

While the ALJ gave Dr. Dipeolu's opinion little weight because he did not personally examine Plaintiff, the opinion nevertheless provides further support for the ALJ's finding that Plaintiff's mental impairment did not significantly affect his ability to perform basic work activity. Tr. 75. *See* 20 C.F.R. § 416.913a (State agency psychologists (such as Dr. Dipeolu) are "highly qualified and experts in Social Security disability evaluation"); *see Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that the ALJ appropriately gave great weight to State agency physician opinion); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (opinion of a State agency medical consultant constitutes expert opinion evidence, which can be relied upon if supported).

Moreover, the ALJ specifically considered Plaintiff's Global Assessment of Function ("GAF")[2] scores of 45 and 53, indicating that his mental conditions cause moderate to serious

---

[2] The GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information." *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018) GAF scores are designed to consider factors outside those used in disability determinations. Furthermore, the Social Security Administration has limited the manner in which GAF scores are used because they are generally not useful without additional supporting description and detail. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (internal citations omitted).

symptoms and impairment in functioning, but appropriately afforded them little weight because they only represent a mental health professional's opinion at the specific time the scores are assessed and are not meant to provide a longitudinal history of the claimant's mental health. Tr. 75. *See Schneider v. Colvin*, 13-CV-0790, 2014 WL 4269083, at *4 (D. Conn. Aug. 29, 2014) (a GAF score is merely a 'snapshot opinion of one or more doctors as to an individual's level of social, psychological and occupational function at a specific point in time [,]' whereas '[a] determination of disability must be based on the entire record.').

Given all of these considerations, the ALJ appropriately found that Plaintiff's mental impairments did not significantly affect his ability to perform basic work activity. Tr. 73-75. Although Plaintiff argues that his symptoms suggested greater impairment, his arguments are meritless. *See* ECF No. 9-1 at 16-20. Not only are Plaintiff's arguments without support, but he ignores all of the evidence recited above, which supported the ALJ's finding. In particular, all of the medical providers to weigh in on Plaintiff's mental functioning found that he was without significant impairment. Furthermore, contrary to Plaintiff's challenge to the ALJ's reliance on the report and findings of Dr. Santarpia (*see* ECF No. 9-1 at 17), it is well established that the opinion of a consultative psychologist may constitute substantial evidence in support of an ALJ's decision. *See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *see also Grega v. Saul*, No. 19-2702-cv, 2020 WL 3042132, at *2 (2d Cir. June 8, 2020) (finding that consulting psychologist's opinion supported ALJ's decision and holding that "[a] consultative examiner's opinion may constitute substantial evidence if otherwise supported by the record"); *Guerra v. Comm'r of Soc. Sec.*, 778 F. App'x 75, 77 (2d Cir. 2019) (holding that consulting psychologist's opinion supported ALJ's decision).

Furthermore, as discussed above, the ALJ expressly considered Plaintiff's treatment notes from Lake Shore in evaluating his functioning (Tr. 73-74), and Plaintiff's argument to the contrary (*see* ECF No. 9-1 at 17, 19) is meritless. *See McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (explaining that "[i]f the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld"). Further, it is the ALJ's duty to evaluate conflicts in the evidence. *See* 20 C.F.R. § 404.1527(c)(i); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (quoting *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

Plaintiff's argument that the ALJ's finding was based on her own lay opinion is similarly meritless. *See* ECF No. 9-1 at 18-20. As noted above, the ALJ's finding was supported by both Dr. Dipeolu's and Dr. Santarpia's opinions and the findings of Plaintiff's treating primary care providers (Tr. 716, 724, 771, 773, 777, 783), as well as Plaintiff's participation in a range of activities during the relevant period, including attending college classes and vocational training, participating in an internship, taking public transportation, shopping in stores, and cooking (Tr. 99-100). Moreover, the ALJ appropriately considered that Plaintiff did not participate in mental health treatment during most of the relevant period, Tr. 74. *See Arnone v. Bowen*, 882 F.2d 34, 39 (2d Cir. 1989) (holding that, while a failure to seek medical attention does not "necessarily" preclude a finding of disability, it "seriously undermines" a disability claim). While Plaintiff suggests that his mental condition may explain his mental health treatment non-attendance (*see* ECF No. 9-1 at 20), this is unsupported by the record, including Plaintiff's reports that he attended school five days per week, at times, and participated in an internship (Tr. 101-03, 125, 272). Accordingly, Plaintiff has failed to satisfy his burden of proving that his mental conditions resulted in any greater limitations than those assessed by the ALJ. *See Barry v. Colvin*, 606 F. App'x 621,

622 (2d Cir. 2015) (stating that "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits").

Plaintiff next argues that the ALJ erred at step three by failing to properly consider Medical Listing 1.04(A). At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. §§ 404.1520(d), 416.920(d). Plaintiff had the burden to show that his impairments met or equaled the requirements of the Listings. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (claimant bears the burden of demonstrating that her impairments meet or are equivalent to a listed impairment(s)). To match an impairment in the Listings, the claimant's impairment "must meet all of the specified medical criteria" of a listing. *Barber v. Comm'r of Soc. Sec.*, 6:15-CV-0338 (GTS/WBC), 2016 WL 4411337, at *3 (N.D.N.Y. July 22, 2016) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* An impairment may also be "medically equivalent" to a listed impairment if it is "at least equal in severity and duration to the criteria of any listed impairment." *Id.* (citation omitted). Additionally, a "claimant must show that he meets all the requirements of the listing consistently." *Beach v. Commissioner*, No. 7:13-cv-323 (GLS), 2014 WL 859167, at *3 (N.D.N.Y. Mar. 5, 2014). "Sporadic findings that some of a listing's requirements are intermittently met (but never all) are not sufficient" to match a listing. *Alington v. Colvin*, No. 15-CV-6247L, 2017 WL 1370998, at *3 (W.D.N.Y. Apr. 17, 2017).

To meet Listing 1.04(A), a claimant must show proof of the following conditions:

1. A disorder of the spine, including but not limited to "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture," and

2. "Compromise of nerve root (including the cauda equina) or the spinal cord," and

3. "Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness)," and

4. "Sensory or reflex loss," and if there is involvement of the lower back,

5. "Positive straight-leg raising test" in both the sitting and supine position.

*Monsoori v. Comm'r of Soc. Sec.*, No. 1:17-CV-01161-MAT, 2019 WL 2361486, at *3 (W.D.N.Y. June 4, 2019) (citing Listing 1.04(A)).

Plaintiff does not argue that his impairments actually met or equaled the requirements of any listed impairments. *See* ECF No. 9-1 at 21-25. Indeed, they did not. While Plaintiff argues that he frequently showed "limitation of motion of spine" (*see id*. at 23), this was insufficient to meet the criteria of Listing 1.04(A). As Plaintiff concedes "all of the requirements of Listing 1.04(A) must be simultaneously present on examination and continue, or be expected to continue, for at least 12 months." *See id*. at 23 (citing Acquiescence Ruling ("AR") 15-1(4)). As further explained in AR 15-1(4), "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression would not rise to the level of severity required by listing 1.04(A)." AR 15-1(4).

Here, Plaintiff frequently demonstrated normal motor strength, intact sensation, and normal reflexes. *See White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (rejecting claimant's argument that he equaled the requirements of Listing 1.04, where the record consistently showed

normal balance, strength, and reflexes). For instance, as the ALJ considered, a chiropractic evaluation in January 2016 noted that Plaintiff did not have any focal deficits or muscle atrophy, and he had full (5/5) strength in his lower extremities, intact sensation, and normal reflexes. Tr. 78, 517. In February 2016, consultative examiner Donna Miller, D.O. ("Dr. Miller"), observed that Plaintiff's straight leg raising tests were negative bilaterally; he had full strength in his upper and lower extremities; he did not have any sensory deficits; and his reflexes were normal.. Tr. 529-30. The ALJ further noted that during visits throughout the relevant period, Plaintiff's primary care providers observed no instability, 4/5 to 5/5 strength, and normal reflexes. Tr. 79, 494, 499, 504, 511, 637, 642, 663, 680, 685, 689, 696, 704, 713, 720, 757. Thus, Plaintiff did not meet his burden of establishing that his impairment met the conditions required to meet this listing. *See Conetta v. Berryhill*, 365 F. Supp. 3d 383, 396-98 (S.D.N.Y. 2019) (finding that claimant failed to show she met Listing 1.04 where there was insufficient medical evidence to show that she met all of the criteria).

Listing 1.04(A) also requires that an individual have a "disorder of the spine. . . resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." *See* 20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04A. There is no evidence of such an abnormality in this case. *See Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 76 (2d Cir. 2012) (emphasizing that Listing 1.04 requires "evidence of nerve root compression"); *see also Woodling v. Comm'r of Soc. Sec.*, 17-cv-0606, 2018 WL 4468824, at *9 (W.D.N.Y. Sept. 18, 2018) (noting that no physician diagnosed nerve root compression); *Beall v. Colvin*, No. 15:16-CV-92, 2017 WL 1155809, at *4 (N.D.N.Y. Mar. 27, 2017) (noting that claimant's imaging did not show evidence of nerve root compression); *Dier v. Colvin*, No. 13-CV-502S, 2014 WL 2931400, at *3 (W.D.N.Y. June 22, 2014) (explaining that Listing 1.04(A) requires evidence of compression, and noting that such findings were not

evidenced by imaging); *Green v. Barnhart*, No. 07-CV-0023, 2009 WL 68828, at *8 (W.D.N.Y. Jan. 6, 2009) (noting that while claimant had herniation there was "no nerve root compromise").

As outlined above, the listing criteria were not consistently met. Given the numerous physical examinations throughout the relevant period, which did not reflect such deficits, the ALJ reasonably found that Plaintiff did not meet the requirements of Listing 1.04(A). *See Conetta*, 365 F.Supp.3d at 397 (explaining that "it is not enough to show that one of these [Listing 1.04A] criteria existed on a single occasion or for a brief period"); *see also Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 889 (2d Cir. 2007) (affirming ALJ's finding that the claimant's impairments did not meet the requirements of Listing 1.04A, despite some positive examination findings); *Alington v. Colvin*, No. 15-CV-6247L, 2017 WL 1370998, at *3 (W.D.N.Y. Apr. 17, 2017) (stating that in order to meet the severity of a listing the claimant "must show that [s]he meets all the requirements of the listing consistently"); *Beach v. Comm'r of Soc. Sec.*, No. 7:13-cv-323(GLS), 2014 WL 859167, at *3 (N.D.N.Y. Mar. 5, 2014) (observing that muscle loss was not found on a continual basis). Thus, the ALJ reasonably found that Plaintiff did not meet his burden of establishing that he met the requirements of Listing 1.04A. *See Perez*, 77 F.3d at 46; *see generally Sullivan v. Zebley*, 493 U.S. at 530.

Plaintiff also argues that "the ALJ failed to provide a meaningful analysis of Plaintiff's symptoms and medical evidence in the context of the Listing 1.04 criteria. Instead, she merely made vague reference to the alleged absence of the necessary characteristics without specification as to what evidence therein allegedly supports her finding." *See* ECF No. 9-1 at 24. Plaintiff's argument lacks merit. *See Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order) (affirming the agency's decision where an ALJ's "general conclusion" that claimant did not meet a listed impairment was supported by substantial evidence, even where the ALJ did not discuss a

particular listed impairment); *see also Berry v. Schweiker*, 675 F.2d 464, 468 (2d Cir. 1982) (per curiam) ("[T]he absence of an express rationale does not prevent us from upholding the ALJ's determination . . . [where] portions of the ALJ's decision and the evidence before him indicate that his conclusion was supported by substantial evidence.").

As discussed, Plaintiff did not meet his burden of establishing that his medical impairments met or medically equaled the requirements of a listed impairment, and his challenge to the ALJ's analysis fails. In sum, the evidence in the record did not establish that Plaintiff met the requirements of Listing 1.04(A), and the ALJ's conclusion that Plaintiff's impairments did not meet or equal the severity of a listed impairment was fully supported by the record.

In his final point of error. Plaintiff argues that the ALJ erred by failing to re-contact certain treating physicians who opined on Plaintiff's ability to work. For example, the ALJ discounted the May 12, 2016 opinion of treating physician Ross Sherban, D.O. ("Dr. Sherban"), stating that Plaintiff is "100% disabled" and "unable to work at this time secondary to his increased pain." Tr. 582. As the ALJ explained, these statements are on an issue reserved to the Commissioner. Tr. 82. *See* 20 C.F.R. § 404.1527(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance"); *Robson v. Astrue*, 526 F.3d 389, 393 (8th Cir. 2008); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). The ALJ also noted that Dr. Sherban's statements are "vague and offer no function-by-function analysis of the claimant's work-related abilities." Tr. 82. For the same reasons, the ALJ afforded little weight to disability ratings provided by other treating providers. Tr. 82, 469, 472, 55.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of the all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Plaintiff's sole challenge to the RFC is that the ALJ should have recontacted these providers for more information. *See* ECF No. 9-1 at 25-26. However, the ALJ was not required to do so. The ALJ's determination that Plaintiff could perform a range of light work reflected a thorough consideration of Plaintiff's condition, taking into account Plaintiff's medical and other records and his subjective allegations regarding the extent of his limitations. Tr. 76-82. *See* 20 C.F.R. § 416.967(b); SSR 83-10. Substantial evidence, including the opinions of Dr. Miller and Dr. Santarpia, normal EMG and nerve conduction studies of Plaintiff's upper and lower extremities, and Plaintiff's range of activities, particularly his school attendance, support the ALJ's finding that Plaintiff was capable of performing a range of light work subject to certain postural and environmental limitations. Tr. 76-82.

Notably, Dr. Miller opined that Plaintiff had moderate limitations with respect to heavy lifting, bending, carrying, kneeling, and squatting. Tr. 530. The ALJ's RFC determination, which limited Plaintiff to light work, which requires no more than 20 pounds at a time, with frequent

lifting or carrying of up to 10 pounds, with only occasional kneeling, crouching, and stooping, was supported by Dr. Miller's opinion. Tr. 76. *See* 20 C.F.R. § 416.967(b). Dr. Miller also found that Plaintiff should avoid dust, irritants, and tobacco exposure, which the ALJ incorporated by restricting Plaintiff to avoid concentrated exposure to odors, dust, fumes, and pulmonary irritants. Tr. 530. *See Mongeur*, 722 F.2d at 1039 (holding that a report by an examining medical provider can constitute substantial evidence).

The Commissioner's regulations in effect at the time of the ALJ's June 27, 2018 decision require that the ALJ develop the record further only if the evidence she already has is insufficient to make a decision; and it is the ALJ who makes that insufficiency determination. *See* 20 C.F.R. § 416.920b(b)(1) ("If any of the evidence in your case record, including any medical opinions, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have"). Thus, recontacting a medical source is only required if the evidence is inadequate for the Commissioner to determine that a claimant is disabled. 20 C.F.R. § 416.912(e). That is not the case here.

Furthermore, the ALJ is under no duty to obtain additional evidence from a treating source or ask for clarification when declining to give controlling weight to a treating source's opinion. *See Micheli v. Astrue*, 501 F. App'x 26, 30 (2d Cir. 2012) (ALJ was not required to recontact treating physician, despite discounting his opinion, where ALJ considered a 500-page record); *see also Johnson v. Colvin*, 669 F. App'x 44, 46 (2d Cir. 2016) (rejecting the argument the ALJ had a duty to recontact a treating surgeon where the record contained "sufficient other evidence" on which the ALJ relied to determine the RFC). As the ALJ had Plaintiff's complete medical history as well as other medical opinions concerning Plaintiff's functioning, she was under no obligation

to seek additional information. *See Micheli*, 501 F. App'x at 30; *see also Johnson*, 669 F. App'x at 46.

Although Plaintiff finds fault with the ALJ's rationale for the limitations set forth in the RFC, it was within the ALJ's discretion to base functional limitations in the RFC on the medical record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (when making a finding as to disability, an ALJ properly "considers the data that physicians provide but draws [his] own conclusions").

Furthermore, the RFC finding is not defective merely because it "does not perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision." *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 78 (2d Cir. 2018); *see also Wilson v. Colvin*, No. 6:16-CV-06509-MAT, 2017 WL 2821560, at *5 (W.D.N.Y. June 30, 2017) ("Furthermore, the fact that an RFC assessment does not correspond exactly to a medical expert's opinion in the record does not mean that the RFC assessment is 'just made up'"); *Landers v. Colvin*, No. 14-CV-1090S, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) (rejecting argument that ALJ failed to incorporate certain moderate work-related limitations suggested by medical sources to whom the ALJ accorded "greatest weight"). Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

While Plaintiff may disagree with the ALJ's conclusion, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted). Plaintiff here failed to meet her burden of proving that no reasonable factfinder could have reached the ALJ's findings on this record.

For all these reasons, the Court finds that the ALJ appropriately considered the evidence of record, including the clinical findings and the medical opinions, and the ALJ's determination was supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE